### In re NEW YORK CITY ASBESTOS LITIGATION.

**United States District Court, Eastern District of New York and Southern District of New York.**

### In re JOINT EASTERN AND SOUTHERN DISTRICTS ASBESTOS LITIGATION.

**New York State Supreme Court: All Counties Within the City of New York.**

**This Document Relates To All Brooklyn Navy Yard Cases.**

**Re Manville Bankruptcy and Transaction Costs.**

**Index No. 40000.**

United States District Court, E. and S.D. New York.

May 15, 1990.

NYAL MEMORANDUM
Before WEINSTEIN, District Judge, and FREEDMAN, Supreme Court Justice.

---

5. The debtor has expressly abandoned any claim for interest on this award.

8

## Manville Bankruptcy

The parties appear to be reluctant to settle with the Manville Trust because there are claimed to be insufficient funds to make current appropriate payments to the plaintiffs. The courts should like to know from the Manville Trust representatives why they have insufficient funds, if that is the case. The Plan itself is physically before us. It appears to have been drafted on the assumption that sufficient funds would be available.

The courts should like an early report on (1) what assets the Trust began with, (2) what the initial projections concerning future claimants, assets and claims payment schedules were at the time the Trust Plan was approved, (3) what assets the Trust currently has, and (4) what payments were made and expenses incurred in internal administration and legal fees and other transactional costs such as payments to counsel for claimants by the trust fund and to the Manville Trust itself.

The courts would like to know how much of the money the Trust has spent has gone to people who were injured and how much to others. The courts would like an explanation of why the Trust has placed itself in this position of having inadequate funds— if this is the case—and what it intends to do to extricate itself.

Has it considered, for example, going back to the bankruptcy judge for an amendment to the plan? Article X of the Plan of Reorganization (p. C–36) retains jurisdiction in the Bankruptcy court. This power would appear to include the right to lift the injunction against suits where the Manville Corporation itself rather than the Trust would be defendant. It would also appear to permit the Trust to obtain more than the 20% of current and past profits of the Manville Corporation the Trust now obtains.

Many of the claims now before the courts in these joint litigations would have been brought much earlier were it not for the then restrictive law of New York. Are these claims now to be treated as pre-bankruptcy petition claims for purposes of Trust disbursements?

If claims are not intended to be paid now, what is intended as to interest? Should not interest be accrued if a party is not to be paid until many years after the time of judgment or settlement?

These questions are being posed by the state judge to whom has been assigned responsibility for asbestos cases currently pending in New York City, almost all of which include claims against Manville.

They are also being posed by the federal judge sitting by designation in both the Eastern and Southern Districts of New York. The federal judge is posing these questions therefore, not only because of the federal interest the court has in protecting those injured who come before it, but also as a judge sitting in the Southern District, the District in which the bankruptcy proceedings were conducted. Other courts, we are informed, are concerned about these same issues relating to the Manville Trust.

In addition to the powers of the federal judge in connection with bankruptcy proceedings and general powers of State Supreme Court and Federal District Court judges in supervising litigation, under section 6401 of the Civil Practice Law and Rules the court may, upon the motion of a person having an apparent interest in property which is the subject of an action, appoint a temporary receiver of the property "where there is danger that the property" will not be available to satisfy a judgment. The court may authorize the receiver "to take and hold ... [the] property, and sue for, collect and sell debts or claims, upon such conditions and for such purposes as the court shall direct." *See also* Rule 66 of the Federal Rules of Civil Procedure. The Trust assets are, the courts are informed, in New York. There are also other equitable and legal powers available to federal and state judges.

The Second Circuit in its opinion approving the Plan of Settlement left open the question of whether post-petition claimants could be bound. *See Kane v. Johns–Manville Corp.*, 843 F.2d 636, 645 (2d Cir.1988). Are not the plaintiffs technically post-peti-

tion claimants for purposes of attacking the Plan or proceeding against the Manville Corporation directly?

The Trust is expected, on an expedited basis, to consider promptly settling these cases in bulk. The justification for requiring such prompt action is the need to cooperate with the courts in mass tort litigations in order to prevent breakdown of the court supervised tort-compensation system.

### Transactional Costs

The plaintiffs' attorneys may wish to consider special arrangements for fees in connection with this special shortfall problem of the Manville Trust so that the funds can go further and the clients can be paid more quickly. The amount of work per case is far less in a mass settlement and fees predicated on a case-by-case trial basis may not be justified.

The courts' present view of the transaction costs problem is that the court should probably not now supervise fees as to plaintiffs, defendants or insurers in settled cases. *Cf. Venegas v. Mitchell,* —— U.S. ——, ——, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74 (1990) ("We ... have no occasion to address the extent of the federal courts' authority to supervise contingent fees."). As far as class actions are concerned—if this procedural device is employed—the plaintiffs' fees will of course, be controlled by the courts. The extent to which similar powers can be exercised in a mass consolidation with much of the attributes of a *de facto* class action has not been addressed by the courts.

If the defendants claim insufficient funds, there may be a fiduciary relationship requiring an inquiry into what the parties and insurers have been doing to maximize payments to the injured. There is arguably a corporate responsibility as a matter of law and equity to provide compensation for extremely large amounts of personal damages that may take priority over obligations to shareholders and executives. The courts would, of course, prefer to avoid the responsibility for this kind of inquiry into, and supervision of, transactional costs.

### Next Meeting

The courts will consider this matter further at our meeting with the parties and Special Master–Referee at 9:30 a.m. on June 1, 1990 at the Federal Courthouse in Brooklyn if it is necessary to do so. The Manville Trust report should be delivered to all parties and the courts before June 1.

On June 1 the Special Master–Referee and the parties will report on settlement. The courts will then take such further action as they deem appropriate.